UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-22836-CV-WILLIAMS
MAGISTRATE JUDGE REID

ROBERT JOHNSON,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE RE
## FEDERAL HABEAS CORPUS PETITION - 28 U.S.C. § 2254

### I. Introduction

Petitioner, **Robert Johnson,** a convicted felon, filed this *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions for kidnapping with a weapon and sexual battery with a firearm/deadly weapon or serious injury, entered following a jury verdict in Miami-Dade County Circuit Court, **Case No. F07-40205.** For the reasons to be discussed in this Report, the federal petition should be DENIED.

---

[1]Pursuant to Fed. R. Civ. P. 25(d), since Mark S. Inch has replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

The case was referred to the undersigned for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Fla. Admin. Order 2019-02, and, the Rules Governing 2254 Habeas Corpus Petitions in the United States District Courts.

For its consideration of the amended petition [ECF No. 28],[2] the court has the respondent's response to this court's order to show cause [ECF No. 34], along with supporting appendices [ECF Nos. 35; 36], and Petitioner's reply [ECF No. 41].

## II. Claims

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 419, 520-21 (1972)(*per curiam*), Petitioner raises the following grounds for relief:

1.  Trial counsel was ineffective for failing to object and move for a mistrial on the basis that Petitioner's confrontation rights were violated after the prosecutor elicited impermissible hearsay testimony from Detective Julio Padron and DNA Analyst Melissa Murphy regarding collection of DNA evidence from the victim by Dr. Carlos Medina and DNA Technician Robert Griffin, both of whom did not testify at trial and were not subject to cross-examination. [ECF No. 28 at 5].

2.  Trial counsel was ineffective for insisting that Petitioner testify on his own behalf at trial, where Petitioner explained he did not want to do so because he was being given medications that caused him to "sleep, see things, and adversely affected his memory" leading him during cross-examination to admit guilt

---

[2]The notation "ECF" in this report references the document entry number of filings in this court's electronic case management system. The page numbers of these exhibits as referenced in this report are those imprinted by the court's electronic case management system, unless otherwise stated.

which was later used by the prosecutor during closing argument. [ECF No. 28 at 7].

3.  Trial counsel was ineffective for failing to request a competency evaluation to ascertain whether Petitioner was competent and able to assist counsel in his defense. [ECF No. 28 at 9].

4.  Trial counsel was ineffective for failing to explain to Petitioner that he faced a maximum possible penalty of life imprisonment if he rejected the state's plea offer and proceeded to trial. [ECF No. 28 at 10].

5.  Trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument. [ECF No. 28 at 11].

6.  Trial counsel was ineffective for failing to object to the improper scoring of the sexual battery conviction as the primary offense on Petitioner's sentencing guideline scoresheet. [ECF No. 28 at 11].

7.  Appellate counsel was ineffective for failing to raise as fundamental error that the judge was biased against the defense. [ECF No. 28 at 12].

8.  Petitioner's sentence of life imprisonment is unlawful because it was predicated on an improper assessment of victim injury points. [ECF No. 28 at 12].

## III. Procedural History

### A. Indictment through Direct Appeal

Because of the nature of the claims, a detailed procedural history of the state court proceedings follows. Petitioner was charged with and found guilty of kidnapping with a firearm, in violation of Fla. Stat. § 787.01(2) and § 775.087

(Count 1), and sexual battery with a firearm/deadly weapon, in violation of Fla. Stat. § 794.011(3) and § 775.087 (Count 2), both life felonies. [ECF No. 35-1, App. E at 105-109, App. F at 110, App. G at 112-118]. He was adjudicated guilty and sentenced to two concurrent terms of life imprisonment. [ECF 35-1, App. G at 113-114]. His convictions were *per curiam* affirmed on appeal in a decision without written opinion. *Johnson v. State,* 59 So. 3d 121 (Fla. 3rd DCA 2011)(unpublished table decision); [ECF No. 35-1, App. H at 119]. Rehearing was denied on April 12, 2011, and the direct appeal concluded with the issuance of the mandate. [*Id.*].

Petitioner was not permitted to seek discretionary review with the Florida Supreme Court because the affirmance on direct appeal did not cite to any decision for which the Florida Supreme Court had accepted review. *See Wells v. State*, 132 So.3d 1110, 1113 (Fla. 2014). Therefore, Petitioner's conviction became final, and the one-year federal limitations period, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), to file his § 2254 petition began running, on **Monday, July 11, 2011,** ninety days after the state appellate court issued its order denying rehearing, when the period for seeking discretionary review with the Supreme Court of the United States expired. *See* Sup. Ct. R. 13; *Gonzalez v. Thaler,* 565 U.S. 134 (2012). Applying the finality trigger of § 2244(d)(1)(A), the federal statute of limitations commenced running on **July 11, 2011.**

- 4 -

**B. From State Post-Conviction Proceedings to Filing Amended § 2254 Petition**

Before his conviction became final, Petitioner returned to the state court, filing a motion to mitigate sentence, pursuant to Fla. R. Crim. P. 3.800(c), which was denied on June 16, 2011. [ECF No. 35-1-1, App. I at 167-73; ECF No. 35-2, App. J at 2-3]. No notice of appeal was filed, so the proceeding concluded on **Monday, July 18, 2011,**[3] when the 30-day period for filing an appeal expired. *See Cramer v. Sec'y, Dep't of Corr.,* 461 F.3d 1380, 1384 (11th Cir. 2006)(finding that time during which a habeas petition could have sought appeal of the denial of a postconviction motion tolls AEDPA's one-year limitations period even where Petitioner did not seek appellate review of the denial order).

The limitations period ran for **304 days**, from conclusion of the above proceedings on **July 18, 2011** until **May 17, 2012,** when Petitioner next filed a motion for postconviction relief, pursuant to Fla. R. Crim. P. 3.850, raising **claims 1 through 6** of this petition. [ECF No. 35, App. K]. The motion was denied on the merits, and the denial subsequently *per curiam* affirmed on appeal in a decision without written opinion. *See Johnson v. State,* 141 So. 3d 190 (Fla. 3rd DCA 2014)(unpublished table decision); [ECF No. 35-2, App. M, pp. 66-73; App. N, p.

---

[3]Where, as here, the 30th day falls on a Saturday, Sunday, or legal holiday, Petitioner has until the next business day to timely file his notice of appeal. *See* Fed. R. Civ. P. 6(a)(1).

75]. The appeal concluded with the issuance of the mandate on **July 7, 2014.** [ECF No. 35-2, App. N at 75].

Before his Rule 3.850 proceeding concluded, Petitioner filed a state petition for writ of habeas corpus with the appellate court, raising **claim 7,** which was summarily denied on the merits. *See Johnson v. State,* 121 So. 3d 1051 (Fla. 3rd DCA 2013)(unpublished table decision); [ECF No. 35-3, App. O, pp. 1-33]. . The proceeding concluded when rehearing and rehearing *en banc* were denied on **November 5, 2013.** [ECF 35-3, pp. 2-3]. Thus, this proceeding concluded before his Rule 3.850 appeal and thus had no impact on the limitations period.

On **July 7, 2014,** the same date that the first Rule 3.850 proceeding concluded, Petitioner signed and handed to prison authorities for mailing, in accordance with the mailbox rule, a motion to correct illegal sentence and for postconviction relief based on manifest injustice, pursuant to Fla. R. Crim. P. 3.850(b), raising **claim 8** of this petition. [ECF No. 35-3, App. Q at 50-99]. The denial of the motion by the trial court was *per curiam* affirmed on appeal in a decision without written opinion. *See Johnson v. State,* 166 So. 3d 790 (Fla. 3rd DCA 2015)(unpublished table decision); [ECF No. 35-3, App. S at 77-83, App. T at 85]. The appeal concluded when the mandate issued on **June 1, 2015.** [ECF No. 35-3, App. T at 85].

Before the above proceeding concluded, Petitioner came to this court, filing an **initial § 2254 habeas petition,** in accordance with the mailbox rule, on **July 24,**

**2014,** after he signed and handed it to prison officials for mailing, as evidenced by the prison legal mail stamp.[4] [ECF No. 1 at 35]. Petitioner moved to stay this case because he had filed a state postconviction motion after filing this federal petition. [ECF No. 14]. A report recommending that the motion be granted was adopted by the district court, who stayed and administratively closed the case. [ECF Nos. 16; 17]. The court ordered Petitioner to move to reinstate this habeas proceeding within thirty days of receiving a final adjudication on his pending state postconviction motion. [ECF No. 17]. The court cautioned Petitioner that failure to notify the court within the thirty-day period "may preclude future review." [*Id.*].

While his federal petition was stayed, Petitioner pursued postconviction relief in the state court, filing another motion to correct illegal sentence, pursuant to Fla. R. Crim. P. 3.800(a). [ECF No. 35-3, Ex. U at 91-99]. The trial court denied the motion, but also ordered Petitioner to show cause why sanctions should not be imposed based on his continued filing of meritless, untimely, and duplicative motions. [ECF No. 35-3, App. W at 105-08]. On **September 24, 2015,** the trial court entered an order for sanctions and directions to the clerk to no longer accept *pro se* postconviction motions from Petitioner. [ECF No. 35-3, App. X at 109]. Petitioner

---

[4]Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing. *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. App. 4(c)(1).

appealed, and the appellate court reversed and remanded because the trial court failed to attach record excerpts conclusively showing Petitioner was not entitled to relief. *See Johnson v. State,* 201 So. 3d 652, 653 (Fla. 3rd DCA 2016); [ECF No. 35, App. Y at 111-12].

Following the appellate court's remand, the trial court entered an order "reiterating" its previously issued orders denying Petitioner's motion and imposing sanctions. [ECF No. 35-3, App. Z at 121-23]. Petitioner appealed, and the appellate court *per curiam* affirmed the trial court's denial in a decision without written opinion. *See Johnson v. State,* 199 So. 3d 272 (Fla. 3rd DCA 2016)(unpublished table decision); [ECF 35-3, App. AA at 125]. Rehearing and rehearing *en banc* were denied, and the appeal concluded when the mandate issued on **September 9, 2016.** [*Id.*].

On **September 26, 2016,** Petitioner filed a motion with this court to lift the stay and reopen this habeas proceeding, which was granted by district court order entered on October 4, 2016. [ECF Nos. 21, 23]. Petitioner also filed a motion to amend, which was granted, subject to application of *Davenport v. United States,* 217 F.3d 1341 (11th Cir. 2000), and other procedural bars and defenses which may apply. [ECF Nos. 22, 24]. On **November 14, 2016,** Petitioner filed an amended § 2254 petition. [ECR 28]. Claims 1 through 7 were previously raised in Petitioner's initial § 2254 petition, but claim 8 was not. However, because it appears that claim 8

was raised in the state forum prior to filing his initial petition, given the procedural history above, it appears that this additional claim was timely instituted since less than one year of untolled time elapsed from the time Petitioner's conviction became final and the filing of his initial and then amended petition.

## IV. Statute of Limitations Defense

Respondent argues that this federal petition is time-barred. [ECF 34 at 21-24]. For the reasons discussed below, Respondent's argument is incorrect and should be rejected.

## A. Applicable Law

The AEDPA governs this proceeding. *See Wilcox v. Fla. Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998) (*per curiam*). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus. . . ."). Specifically, the AEDPA provides that the limitations period shall run from the latest of—

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

(C)     the date on which the constitutional right asserted was initially
         recognized by the Supreme Court, if that right has been newly
         recognized by the Supreme Court and made retroactively
         applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims
         presented could have been discovered through the exercise of
         due diligence.

*See* 28 U.S.C. § 2244(d)(1)(A)-(D).

## B. Analysis

First, Respondent miscalculates that there were 56 days untolled, from the

June 1, 2015 mandate, concluding the appeal of the denial of his motion to vacate,

and the filing of Petitioner's initial habeas corpus petition on July 25, 2014. [*Id.* at

21]. Clearly, the § 2254 petition, filed in 2014, was initiated prior to the 2015

mandate. As noted previously in this Report, Respondent's calculations of untolled

time are inaccurate. Further, there appears to be less than one year of untolled time

during which no postconviction proceedings were pending.

Next, Respondent argues that Petitioner failed to timely move to lift the stay

and re-open this case. [ECF 34 at 23]. As such, Respondent argues that the amended

petition is untimely because the one-year limitations period ran by the time he sought

to reopen this proceeding. [*Id.* at 23-24]. Respondent claims that the stay was granted

based on Petitioner's then pending 2014 motion to vacate which concluded on June

1, 2015. [*Id.* at 21]. Although Petitioner also instituted other collateral proceedings

in the state court, Respondent argues that these should not impact the limitations period because they were not the reason for this court's grant of the stay. [*Id.* at 22].

However, the district court's order granting the stay did not state that the failure to seek reinstatement "shall" preclude future review, only that it "may." [ECF No. 23]. In any event, the court granted Petitioner's motion to reinstate, and directed the Clerk to reopen the case. [*Id.*].

## C. Conclusion

Given all of the foregoing, Respondent's argument that this federal petition, as amended, should be dismissed as time-barred is not meritorious. There was less than one year of untolled time from the time Petitioner's judgment became final and the filing of his initial and amended federal petition. Therefore, this federal proceeding was timely instituted.

## V. Exhaustion and Procedural Default

Respondent concedes that the claims in this federal petition have been exhausted in the state forum. [ECF No. 34 at 25-58]. It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. *Anderson v. Harless,* 459 U.S. 4 (1982); *Hutchins v. Wainwright,* 715 F.2d 512 (11th Cir. 1983). From review of the record, Respondent's concession in this regard is correct. The

claims raised here were presented to the state court in postconviction motions, and are ripe for federal habeas corpus review.

## VI. Facts Adduced at Trial

Petitioner's convictions arose from the December 1990 kidnapping and sexual battery of Francis Conners (the "victim"). [ECF 36-3, App. C, T.151-53].[5] Because the victim, did not own a car or cellular phone, she was driven to work by a co-worker, taxicab, or bus. [*Id.,* T.148-49]. On December 10, 1990, the victim was scheduled to start work at 4:00 a.m., and ordered a taxicab to drive her there. [*Id.,* T.150-51]. While waiting for the taxicab, Petitioner drove up to the victim, asked her what she was doing and where she was going, and then pulled out a gun, ordering her into his car. [*Id.,* T.150-54]. After the victim got in the vehicle, Petitioner drove to an isolated warehouse area where he raped her. [*Id.,* T.153-57, 188]. At the time, Petitioner was not wearing a condom and ejaculated on the victim. [*Id.,* T.157]. Afterwards, he "dropped her off" and warned her not to tell anyone what happened. [*Id.,* T.157]. The victim walked to a friend's house, who then walked with the victim to the Opa Locka Police Department, where she reported the incident. [*Id.,* T.157]. At the time, the victim was crying and distraught. [*Id.,* T.212-13]. She described her

---

[5]The letter "T" in this report followed by a page number refers to the transcripts of the trial and sentencing provided by Respondent at docket entry 36. The page number is that of the actual transcript and not the page number imprinted by the court's electronic docketing system.

attacker as a male, approximately 5'7" tall, weighing about 170 pounds. [*Id.,* T.188, 190].

After speaking with the victim, Detective Julio Padron ("Det. Padron"), with the Sexual Battery Section of the Miami-Dade Police Department ("MD Police Dep't"), drove the victim to the location of the rape, and then to a hospital's rape treatment center. At the hospital, a physician examined the victim in the presence of a nurse. [*Id.,* T.158-59]. After completing the examination, the physician provided Det. Padron with the victim's panties, a tube of the victim's blood, a pubic hair sample, one vaginal smear, three vaginal swabs, one cervical smear, three cervical swabs, one vaginal aspirate, one saliva specimen. [*Id.,* T.220-21, 231]. Det. Padron took each item of the bags provided, physically inspected them, signed the proper receipts for the items, replaced them into the bags, sealed the bags with evidence tape, and wrote the case number on the bags, submitting them to the serology section of the police laboratory. [*Id.,* T.221, 227, 230-31].

Seventeen years later, just prior to trial, November 2007, Detective William Nadrama ("Det. Nadrama"), with the Sexual Crimes Bureau at the Miami-Dade PD, interviewed the victim, at which time he showed her a 1998 driver's license photograph of Petitioner, and asked her if she could identify him as her attacker. [ECF 36-4, App. D, T.241-47]. The victim, however, could not identify the individual depicted in the photograph, nor the Petitioner, sitting in the court during

- 13 -

trial, as her attacker. [*Id.,* App. C, T.161-63, App. D, T.247-48, 252]. At trial, the victim testified that she never had consensual sex with the individual depicted in the 1998 photograph and never had consensual sex with Petitioner, who was sitting in court. [*Id.,* T.167].

Next, Det. Nadrama testified that, after obtaining a court order, he obtained an oral swab of Petitioner's mouth, and then secured it in a sealed evidence bag. [ECF 36-4, App. D, T.248-250].

DNA Analyst, Melissa Murphy ("Analyst Murphy"), an expert in DNA analysis, testified that she received cuttings from the victim's panties, vaginal swabs, a standard sample of the victim's blood, and a standard sample of Petitioner's oral swab. [*Id.,* T.252-268, 270-71]. Analyst Murphy recalled the items were sealed and there was nothing to indicate that the evidence had been tampered with. [*Id.,* T.269-70]. Analyst Murphy compared the DNA profiles from the evidence samples to the DNA samples of the standards that were submitted. [*Id.,* T.272-73]. According to Analyst Murphy, the male DNA on the victim's panties and on the vaginal swabs matched Petitioner's DNA. [*Id.,* T.273].

Petitioner testified on his own behalf at trial, admitting he was a ten-time convicted felon. [*Id.,* T.308]. Petitioner did not recognize the victim depicted in a photograph taken at or around the time of the incident, and did not recall ever having sex with the victim. [*Id.,* T.206, 308-09]. He also did not recognize the victim in

court. [*Id.,* T.308]. According to Petitioner, in 1990 he was having "a good time with a woman," when a dispute arose between them regarding some money owed, but when he did not have enough to pay the woman, he told her he would give her the rest of the money when he got paid later in the week. [*Id.,* T.313-14]. He claims he never saw the woman again, and could not remember if the victim in the photograph or in court was that woman. [*Id.,* T.314-15]. During cross-examination, he admitted he was young, unproductive, and did "bad things." [*Id.,* T.315-16]. He further admitted he could not remember everything that happened back then, and it was possible he committed this offense. [*Id.,* T.316].

## VII. Governing Legal Principles

### A. Standard of Review

"'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)). This standard is both mandatory and difficult to meet. *White v. Woodall,* 572 U.S. 415, 420 (2014).

The AEDPA provides that a federal court may not grant habeas relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017), cert. denied, *Rimmer v. Jones,* 138 S. Ct. 2624 (2018).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010)(quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013)(citations omitted). The Eleventh Circuit "'has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it.'" *See Wiggins v. Sec'y, Fla. Dep't of Corr.*, 766 F. App'x 817 (11th Cir. Mar. 12, 2019)(per curiam)(quoting *Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019)). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

For purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362,

365 (2000). The relevant law is the federal law that existed on the date a petitioner's conviction became final. *Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding." *Id.* (citing *Newland v. Hall,* 527 F.3d 1162, 1196–1201 (11th Cir.2008)).

To review a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter,* 562 U.S. at 100; *See Meders,* 911 F.3d at 1351 (citing *Harrington,* 562 U.S. at 100). To be entitled to federal habeas corpus relief, a petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lee,* 726 F.3d at 1192 (quoting *Harrington,* 560 U.S. at 101-102).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States

Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *Lee,* 726 F.3d at 1192 (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

"A state court decision involves an 'unreasonable application' of clearly established federal law 'if the state court correctly identifies the governing legal principle' from the relevant Supreme Court decisions 'but unreasonably applies it to the facts of the particular case.'" *Lee,* 726 F.3d at 1192 (quoting *Bell v Cone,* 535 U.S. at 694); *Williams,* 529 U.S. at 413. The term "clearly established Federal law" refers to the decisions and not *dicta* of the Supreme Court, at the time of the relevant state court decision. *See Lee,* 726 F.3d at 1192 (quoting *Williams,* 529 U.S. at 412; *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1301-02 (11th Cir. 2013)). However, "[C]ircuit precedent may not be used 'to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *See Lee*, 726 F.3d at 1192 (quoting *Marshall v. Rodgers,* 569 U.S. 58, 62 (2013)). Thus, where there is Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods v. Donald,* 135 S.Ct. 1372, 1377 (2015). If, however, the state court decision is contrary to clearly established federal law, the federal habeas corpus court must independently consider the merits of Petitioner's claim. *See Panetti v. Quarterman,* 551 U.S. 930, 954 (2007).

- 18 -

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*.'" *Reaves v. Sec'y, Fla. Dep't of Corr.,* 872 F.3d 1137, 1151 (11th Cir. 2017)(alteration in original)(quoting *Cone v. Bell,* 556 U.S. 449, 472 (2009)). In *Johnson v. Williams,* 568 U.S. 289 (2013), the Supreme Court explained that a state court decision is an adjudication "on the merits" and still entitled to AEDPA deference when it "addresses some but not all of a defendant's claims." *Johnson v. Williams,* 568 U.S. at 298. "The Supreme Court observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances in which a state court may simply regard a claim as too insubstantial to merit discussion.'" *Lee*, 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299).

In any event, this court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)(holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Connor v. GDCP Warden,* 784 F.3d 752, 767, n. 16 (11th Cir. 2015)("[B]ecause we conclude that Mr. Connor would not be entitled to habeas

relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

Finally, it is well settled that Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Fillmore v. Perry,* 163 F. App'x 819, 820 (11th Cir. 2006)(per curiam)(citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).

## B. Ineffective Assistance of Counsel Principles

Claims 1 through 7 of this federal petition is governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland,* 466 U.S. at 684–85. When assessing counsel's performance under *Strickland,* the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White,* 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333–34 (11th Cir. 2012).

- 20 -

"Where the highly deferential standards mandated by *Strickland* and the AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt,* 735 F.3d 1311, 1323 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and, (2) he suffered prejudice resulting from that deficiency. *Strickland,* 466 U.S. at 687-88. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690-91. To uphold a lawyer's strategy, a court need not attempt to divine the lawyer's mental processes underlying the strategy, because there are "countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. No lawyer can be expected to have considered all those ways. *Chandler v. United States,* 218 F.3d 1305, 1316 (11th Cir. 2000)(en banc).

To establish deficient performance, Petitioner must show that, in light of all circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra.; Cummings v. Sec'y for Dep't of Corr.,* 588 F.3d 1331, 1356 (11th Cir. 2009). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what

is constitutionally compelled." *Chandler,* 218 F.3d at 1313; *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States,* 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Strickland,* 466 U.S. at 697; *Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013).

## VIII. Discussion of Claims

### A. Failure to Move for Mistrial

In **claim 1,** Petitioner asserts trial counsel was ineffective for failing to object and move for a mistrial on the basis that Petitioner's confrontation rights were violated after the prosecutor elicited impermissible hearsay testimony from Det. Padron and Analyst Murphy regarding the collection of DNA evidence from the victim by Dr. Carlos Medina and DNA Technician Robert Griffin, who did not

testify at trial and were not subject to cross-examination. [ECF 28, p. 5]. The Petitioner is not entitled to habeas corpus relief on this claim.

When the identical claim was raised in the Rule 3.850 postconviction proceeding, it was denied by the trial court on the finding that "the State of Florida's decision regarding which witness to call to testify was not something his trial counsel could challenge via a motion for a mistrial. Defense counsel properly raised the issue during a motion for judgment of acquittal and his motion was denied (T-298-299). Additionally, this argument could have and should have been raised on appeal." [ECF No. 35-2, App. M at 70]. That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *Johnson v. State,* 141 So.3d 190 (Fla. 3rd DCA 2014)(unpublished table decision). [ECF No. 35-2, App. N at 75].

1. Applicable Law

Under federal law, the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). "Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51).

The Florida Supreme Court in *State v. Belvin,* 986 So.2d 516 (Fla. 2008), reviewed the admissibility of forensic reports in light of *Crawford*, and concluded that the reports were testimonial, and their admission violated *Crawford* because the right to confront the witness during a discovery deposition was not a sufficient substitute for the right to confront a witness in court. *Belvin,* 986 So.2d at 524–25 (citations omitted).

In 2009, the Supreme Court of the United States concluded in *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 310–11 (2009), that affidavits prepared by forensic technicians are testimonial under *Crawford.* Therefore, the defendant had the right under the Confrontation Clause to confront the analysts who prepared the affidavits, absent (1) a finding that the analysts were unavailable, and (2) the defendant's having had a prior opportunity to cross-examine them. *Melendez-Diaz,* 557 U.S. at 311; *United States v. Sardinas,* 386 F. App'x 927, 942 (11th Cir. 2010)(citing *Melendez-Diaz*, 129 S.Ct. at 2532).

Thereafter, the Florida Supreme Court distinguished *Belvin* and *Melendez–Diaz,* approving the testimony of a supervising witness who offered her own opinion based on data generated by a team of analysts. *See Smith v. State,* 28 So.3d 838, 853–55, 855 n.12 (Fla. 2009). In *Smith,* the trial court permitted an FBI team supervisor to testify about her conclusion that a DNA sample matched the known profile of the defendant. *Id.* at 853. The Florida Supreme Court explained that, unlike the experts

in *Belvin* or *Melendez–Diaz,* Smith's expert's testimony did not violate the Confrontation Clause because she formed her own conclusions from the raw data generated by several members of her team and—more importantly—testified during trial, where she was subject to cross-examination as to those conclusions. *Smith,* 28 So.3d at 854–55.

Following *Melendez–Diaz,* the Supreme Court of the United States further ruled on admissibility of forensic laboratory reports in *Bullcoming v. New Mexico,* 564 U.S. 647 (2011) and *Williams v. Illinois,* 567 U.S. 50 (2012). In *Bullcoming,* a majority of the Court held that a surrogate testifying witness could not be used to admit a forensic report written by a non-testifying technician. *Bullcoming v. New Mexico,* 564 U.S. at 663, 131 S.Ct. 2705. In *Bullcoming,* the original analyst, who performed a blood-alcohol content test was unexpectedly placed on unpaid leave on the eve of trial, but the prosecution did not claim that the analyst was unavailable. *Bullcoming,* 564 U.S. at 661–62. The surrogate witness who testified did not offer an independent opinion, so that the defense was denied the opportunity to question the original analyst about the procedures used, or explore why the analyst had been placed on unpaid leave. *Id.* The Court concluded that testimony from the surrogate witness did not cure the underlying violation of *Bullcoming*'s right under the Sixth Amendment to confront the original analyst. *Id.* at 663.

In *Williams,* a plurality of the Supreme Court of the United States concluded that an expert witness could offer an opinion about a forensic report without ultimately testifying to the underlying truth of that report. *Williams v. Illinois,* 567 U.S. at 57–58. The report, prepared by a nontestifying witness, even though it was not admitted at trial, would not have violated the Confrontation Clause. *Williams,* 567 U.S. at 59. In so ruling, the Court determined the report was not testimonial, because it was generated at a time when a dangerous, unknown rapist was at large. *Id.* at 2243–44 (citation omitted).

More recently, since *Melendez–Diaz, Bullcoming,* and *Williams*, the Florida Supreme Court has considered whether a substitute forensic technician, specifically a medical examiner, may testify. *See Calloway v. State,* 210 So.3d 1160 (Fla. 2017). In *Calloway,* the trial court allowed Dr. Hyma to testify in place of the medical examiner who had performed the autopsies, regarding his independent conclusions on the cause of death and injuries to the victims. *Calloway,* 210 So.3d at 1192. Before and during trial, defense counsel objected on the basis that the prosecution had failed to demonstrate the medical examiner's unavailability, in violation of *Crawford. Id.* Without expressly finding the medical examiner was unavailable, the trial court ruled that Dr. Hyma could offer his own opinion and be subject to cross-examination during trial. *Id.* As a result, Dr. Hyma testified that he reviewed photographs and a descriptive narrative taken from the crime scene; body diagrams

and sketches; police records; medical records; and medical examiner's autopsy reports to prepare his opinion regarding the causes of death. *Id.* He testified that the medical examiner was part of the investigative team that responded to the crime scene in 1997. *Id.* During redirect examination, Dr. Hyma confirmed that he developed his own objective findings regarding the cause of death and stated that he primarily relied on photographs taken from the scene. *Id.*

The Florida Supreme Court concluded that the surrogate testimony of Dr. Hyma did not violate Calloway's Confrontation Clause rights because Dr. Hyma was available during trial to testify and was subject to cross-examination. *See Calloway,* 210 So. 3d at 1195 (citing *Smith*, 28 So.3d at 853–55, 855 n.12). The Florida Supreme Court further found the medical examiner's autopsy reports were not admitted through the testimony of Dr. Hyma. *See Calloway,* 210 So. 3d at 1195 (quoting *Williams v. Illinois,* 567 U.S. 50, 74-76 (2012) (plurality opinion) (finding no Confrontation Clause violation in the admission of an expert opinion that relies upon data not directly in evidence); *Bullcoming,* 564 U.S. at 668 (Sotomayor, J., concurring in part)). Instead, in *Calloway,* Dr. Hyma clearly explained to the jury that his independent opinion was derived from the photographs taken by investigators at the scene and from the autopsy reports. It was Dr. Hyma's independent opinion that was available during trial and subject to cross-examination. *See Calloway,* 210 So. 3d at 1195 (citing *Smith,* 28 So.3d at 853–55. Both the expert

in *Smith* and Dr. Hyma testified that they drew their own independent conclusions. *See id.* Thus, the *Calloway* court found no Confrontation Clause violation because the defendant was afforded the in-court opportunity to cross-examine the State's expert about the cause of death. *Calloway,* 210 So.3d at 1195.

2. Analysis

Neither the Supreme Court of the United States nor the Eleventh Circuit have required that "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *See Melendez-Diaz,* 577 U.S. at 311 n.1. The Court made clear that "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility," and thus it is up to the prosecution to determine the testimony and what crucial steps in the chain of custody are necessary at trial. *Melendez-Diaz,* 557 U.S. at 311.

As applied, there was no Confrontation Clause violation. Analyst Murphy testified that she received, examined the evidence, and prepared the DNA matching the samples tested to those of the victim and Petitioner. [ECF 36-4, App. D, T.252-306]. She further opined that it did not appear that the evidence had been tampered with as it was in a sealed evidence bag, identified with Petitioner's case number. [*Id.*]. Counsel had ample opportunity to cross-examine the expert on her conclusions. Further, there was more than ample evidence adduced from Det. Padron and Det.

Nadrama regarding the chain of custody of the evidence that was preserved and tested for DNA by Analyst Murphy. [ECF 36-3, App. C, T.207-34, 36-4, App. D, T.252-306].

Given the foregoing, Analyst Murphy's testimony did not violate Petitioner's confrontation rights, nor was his trial rendered fundamentally unfair resulting from the state's failure to call Dr. Medina and the technician to testify at trial regarding the securing of the DNA samples and its chain of custody. Accordingly, Petitioner has not demonstrated prejudice under *Strickland* arising from counsel's failure to pursue this claim. Therefore, the state court's rejection of this claim during the Rule 3.850 proceeding should not be disturbed. *Williams v. Taylor*, supra.

### B. Misadvice Re Testifying at Trial

In **claim 2,** Petitioner asserts that trial counsel was ineffective for insisting that Petitioner testify at trial. Petitioner claims he did not want to testify because during his pretrial confinement he was being given medications that caused him to "sleep, see things. and adversely affected his memory," which led him to admit his guilt during the prosecution's cross-examination. [ECF No. 28 at 7]. Petitioner is not entitled to relief on this claim.

When the identical ground was raised during the Rule 3.850 proceeding, it was denied by the trial court on the finding that Petitioner's claim is "clearly refuted by the record and without merit" where Petitioner "answered all of the court's

inquiries throughout the trial clearly and intelligently, exhibiting a complete understanding of what was going on and what was being asked of him. He intelligently and actively participated in the trial, communicating with his attorney about trial issues (id., cross examination of witnesses) as exemplified when his trial counsel consulted with him on at least two occasions (T-192 and T-251)." [ECF No. 35-2, App. M at 71]. The trial court also found correctly that Petitioner "was extensively and completely colloquied regarding his right and decision to testify, and how his prior convictions could and would be brought in to impeach him." [*Id.*]. Next, the trial court also recalled that Petitioner "acknowledged and agreed that the decision to testify was his and his alone, and accepted full responsibility for that decision. (T-301-307)." [*Id.*].

Finally, the trial court found Petitioner had also participated in discussions during the charge conference and "intelligently and articulately asked for specific lesser included instructions that he wanted the Court to give (T-328 and T-334-338)." As a result, the trial court found Petitioner's claim regarding being coerced or misadvised by counsel into testifying and failing to secure a competency evaluation are meritless. The trial court's rejection of the claim was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *See Johnson v. State,* 141 So. 3d 190 (Fla. 3rd DCA 2014)(unpublished table decision). [ECF No. 35-2, App. N. at 75].

- 30 -

1. Applicable Law

Under the first prong of the *Strickland* analysis*,* an attorney is deficient if counsel refused to accept the defendant's decision to testify and refused to call him to the stand to testify or, alternatively, where counsel never informed the defendant of his right to testify and that the ultimate decision belonged to the defendant alone. *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*). *Strickland* prejudice analysis requires a showing that, but for counsel's deficiency, the outcome of the trial would have been different. *United States v. Teague*, *supra*.

2. Analysis

At trial, during a colloquy on the record, Petitioner made the ultimate decision to testify on his own behalf. *See* [ECF 36-4, App. D, T.302-04]. Petitioner confirmed he had discussed his right to testify with counsel, and understood he had the right to remain silent and not testify on his own behalf at trial. [*Id*.]. He further affirmed his understanding that the decision to testify was his alone, and still wanted to testify, even knowing that the jury would learn he was a ten-time convicted felon. [*Id.*]. He denied being forced to testify. [*Id.* T.305]. Even if, as suggested, counsel's advice caused Petitioner to testify, during the colloquy Petitioner could have expressed his reservations, and exercised his right to remain silent.

Now, in retrospect, Petitioner cannot fault counsel for failing to properly counsel him to remain silent. It was the Petitioner's ultimate decision, and he chose

to testify on his own behalf. Petitioner has not demonstrated deficient performance or prejudice under *Strickland.* As a result, the rejection of the claim by the trial court is entitled to deference and should not be disturbed here. *Williams v. Taylor, supra.*

## C. Failure to Seek Competency Evaluation

In **claim 3,** Petitioner asserts trial counsel was ineffective for failing to request a competency evaluation to ascertain whether Petitioner was competent and able to assist counsel in his defense. [ECF No. 28 at 9]. Petitioner maintains he was "compelled" to testify on his own behalf, contrary to his intent and desire. [*Id.*] Respondent's argument that this claim is devoid of merit is correct. [ECF No. 34 at 34]. In his reply, Petitioner suggests that counsel had a duty to investigate Petitioner's competency and failed to do so. [ECF 41 at 5]. Petitioner states there is "some evidence" in the state court record regarding Petitioner's competency, which was never resolved. [*Id.* at 6]. Petitioner does not identify the nature of this evidence, nor whether it supports Petitioner's claim of mental incompetency. [*Id.*]. It is Petitioner's burden to establish a claim for relief.[6] As discussed below, he has not done so and this claim should be denied.

---

[6]The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall,* 542 F.3d 1253, 1270 (11th Cir. 2008). Therefore, the mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254. *See Smith v. Wainwright,* 777 F.2d 609, 616 (11th Cir.1985)(holding that

1. <u>Applicable Law</u>

Two Supreme Court cases set forth the now longstanding and well-accepted principle that the Constitution does not permit trial of an individual who lacks "mental competency." *See Indiana v. Edwards,* 554 U.S. 164, 170 (2008)(citing *Dusky v. United States,* 362 U.S. 402 (1960)(*per curiam*) and *Drope v. Missouri,* 420 U.S. 162 (1975). In *Dusky,* the Supreme Court set forth the competency standard as (1) whether the defendant has "a rational as well as factual understanding of the proceedings against him" and (2) whether the defendant "a has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky,* 362 U.S. at 402 (internal quotation marks omitted). In *Drope*, the Court repeats the *Dusky* standard, stating that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 420 U.S. at 171.

Thus, courts are required to "adequately ensure a defendant is not mentally incompetent during trial." *See Arsis v. Sec'y, Florida Dept. of Corr.,* 557 F. App'x 845, 848 (11th Cir. 2014)(citing *Pate v. Robinson,* 383 U.S. 375, 384–86 (1966)). A

---

a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice).

lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to petitioner's competency at the time in question. *Medina v. Singletary,* 59 F.3d 1095, 1106 (11th Cir. 1995).

The courts have recognized that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina,* 505 U.S. at 450. In order to avoid a *Pate* violation, the Eleventh Circuit instruct that courts consider the following three factors: "(1) evidence of the defendant's irrational behavior; (2) his demeanor at trial; and (3) any prior medical opinion on his competence to stand trial." *Id.* (citing *Drope,* 420 U.S. at 172, 180).

The burden on a petitioner seeking federal habeas relief, on the grounds of incompetency, is heavy. "Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Sheley v. Singletary,* 955 F.2d 1434, 1438 (11th Cir. 1992)(quoting *Reese v. Wainwright,* 600 F.2d 1085, 1091 (5th Cir. 1979)). Evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial. *Medina,* 59 F.3d at 1107. "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must

indicate a present inability to assist counsel or understand the charges." *Battle v. United States,* 419 F.3d 1292, 1299 (11th Cir. 2005)(quoting *Medina,* 59 F.3d at 1107)(quoting *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir. 1985)). The state court's factual conclusions regarding a defendant's competence to stand trial are entitled to a presumption of correctness, and can be overcome only with clear and convincing evidence of incompetence. *Pardo v. Sec'y, Fla. Dep't of Corr.,* 587 F.3d 1093, 1101 (11th Cir. 2009) (citing *Demosthenes v. Baal,* 495 U.S. 731, 735 (1990)(*per curiam*)).

2. <u>Analysis</u>

Review of the trial and sentencing transcripts demonstrate that Petitioner had the present ability to consult with his attorney, was rational, and had a factual understanding of the proceedings against him. In particular, immediately before trial, a colloquy was conducted on the record during which Petitioner indicated he wanted to proceed to trial, despite knowing he was facing a term of life imprisonment. [ECF No. 36-1, App. A, T.3-8; ECF No. 36-2, App. B, T.20]. Petitioner's colloquy with the trial judge—with respect to his decision to testify on his own behalf—reveals a clear and intelligent understanding of the proceedings against him, and a clear ability to consult rationally and effectively with his lawyer. [ECF No. 36-4, App. D, T.302-305]. Thus, the trial court's rejection of the claim is supported by the record.

Petitioner's medical records, attached to his Rule 3.850 motion, reveals that, on November 17, 2007, Petitioner was able to respond to questioning, indicating there was nothing wrong with him and that he had never taken medication in his life, but was "upset with the police officer and feeling depressed." [ECF 35, Ex. K at 211-28]. In May 2008, he reported depression, not sleeping well, and hearing voices, but by April 30, 2009, Petitioner states he was "o.k." [*Id.*].

Consequently, Petitioner cannot demonstrate deficiency or prejudice under *Strickland* arising from counsel's failure to pursue a mental competency examination prior to trial. *See Collier v. Sec'y, Fla. Dep't of Corr.,* 622 F. App'x 887, 888 (11th Cir. 2015). On this record, Petitioner has not demonstrated that he was incompetent to proceed to trial or to participate at sentencing. Thus, he cannot establish that the rejection of the claim in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of *Strickland*.

Therefore, relief is not warranted on this claim. *Williams v. Taylor, supra.*

### D. Misadvice Re Pleading Guilty Versus Proceeding to Trial

In **claim 4,** Petitioner asserts that trial counsel was ineffective for failing to explain to Petitioner that he faced a maximum possible penalty of two terms of life imprisonment if he rejected the state's plea offer and proceeded to trial. [ECF No. 28 at 10]. The Petitioner is not entitled to relief on this claim.

When the identical claim was raised in the Rule 3.850 proceeding, it was rejected by the trial court because it was refuted by the April 3, 2009 proceeding, where Petitioner was advised he faced life imprisonment if convicted, that the best plea offer was one involving a ten-year sentence and ten-years of probation, but after colloquy with the court, Petitioner rejected the plea, deciding to go forward with trial. [ECF 35-2, App. M at 71]. The rejection of the claim was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *Johnson v. State,* 141 So.3d 190 (Fla. 3rd DCA 2014)(unpublished table decision); [ECF 35-2, App. N at 75].

1. Applicable Legal Standard

The law is well settled that defense counsel has an affirmative duty, under the Sixth Amendment, to provide competent advice, and to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to an accused. *See Missouri v. Frye,* 566 U.S. 134, 140-141 (2012); *Lafler v. Cooper,* 566 U.S. 156, 162-63 (2012)(citations omitted). The *Strickland* framework applies to advice regarding whether to plead guilty or proceed to trial. *See Lafler,* 566 U.S. at 162-63 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)).

While the analysis of *Strickland*'s performance prong is the same, in *Lafler,* the Supreme Court explained that, to prove *Strickland* prejudice, a petitioner is required to demonstrate that the outcome of the plea process would have been

different with competent advice. *Lafler v. Cooper,* 566 U.S. at 162-63; *Frye,* 566 U.S. at 146. In *Lafler,* the Court ruled that the habeas petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 163. *Freeman v. United States,* No. 16-17185-J, 2018 WL 6318358, at *10 (11th Cir. Jul. 31, 2018), cert. denied, 139 S. Ct. 1352 (2019).

2. Analysis

On April 3, 2009, at a pre-trial hearing, the court inquired whether the case was proceeding to trial on April 20, 2009. [ECF No. 36-1, App. A, T.3, 5]. Defense counsel responded that Petitioner had requested that counsel file additional motions that his former attorney had not, but also requested to inform the court that the defense was ready for trial. [*Id*., T.4]. Defense counsel explained to Petitioner that he would be unable to accomplish the things Petitioner had requested with a few days left before the start of trial. [*Id.*]. Regarding the statute of limitations, defense counsel explained that he had advised Petitioner that there was no limitations on bringing charges for kidnapping and sexual battery, but claims Petitioner still wanted

a motion filed on the basis of expiration of the statute of limitations. [*Id.,* T.6]. The Petitioner was sworn and after providing background information, in response to the court's inquiry, Petitioner stated that he wanted to proceed to trial. [*Id.,* T.7].

When the court inquired whether the state had extended a plea offer, the prosecutor responded, stating they had offered Petitioner a plea to 10 years in prison and 10 years of probation. [*Id.,* T.9]. A colloquy was conducted with Petitioner, during which the court inquired whether Petitioner was aware of the plea offer. [*Id.*]. Petitioner affirmed he was, but stated he did not want to accept the plea. [*Id.*]. After speaking briefly with his attorney, defense counsel indicated on the record that Petitioner was hoping he would get credit time served if he pleaded guilty. [*Id.*]. The court then asked if it was his decision to reject the 10-year plea offer, and Petitioner responded that it was, and he was accepting full responsibility for his decision. [*Id.,* T.10]. Next, Petitioner acknowledged that if he proceeded to trial he was facing life imprisonment. [*Id.,* T.11]. Even facing life, Petitioner stated he was rejecting the plea and wanted to proceed to trial. [*Id.*].

Even if, as suggested, he was misadvised by counsel regarding the maximum term of imprisonment he was facing if convicted at trial, the court explained to Petitioner he faced a term of life imprisonment if convicted. The prosecutor advised there were no better plea offers, but Petitioner decided to reject the plea and proceed to trial.

Petitioner's allegations in this habeas proceeding are clearly refuted by the record and devoid of merit. Consequently, the rejection of this claim in the Rule 3.850 proceeding was not contrary to or an unreasonable application of controlling federal constitutional principles. *Williams v. Taylor, supra.* Petitioner's "after the fact" suggestion that he would have accepted the state's plea offer had he been properly advised regarding his sentence exposure is not only belied by the record, but purely speculative. *See Freeman v. United States,* 2018 WL 6318358, at *11 (citing *Tejeda v. Dugger,* 941 F.2d 1551, 1558-59 (11th Cir. 1991)).

Nothing in the record supports a finding that Petitioner was misadvised by counsel to reject the state's plea offer. Petitioner has not met his burden of proof, having failed to demonstrate that counsel's purported deficiencies resulted in prejudice under *Strickland.* Therefore, relief is not warranted on this claim, and the rejection of the claim in the state forum should not be disturbed here. *Williams v. Taylor, supra.*

### E. Failure to Object Re Prosecutorial Misconduct During Closing

In **claim 5,** Petitioner asserts that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument on the basis of four comments which he claims deprived him of a fair trial. [ECF No. 28 at 11]. Petitioner argues that the prosecutor bolstered the credibility of the victim and Analyst

Murphy, appealed to the jury's sympathy for the victim, and argued facts not in evidence. [*Id.*].

When the identical claim was raised in the state court, it was denied, in pertinent part, on the basis that it "is completely without merit and unsupported by the record." [ECF 35-2, App. M at 72]. The rejection of the claim was subsequently affirmed on appeal in a decision without written opinion. *See Johnson v. State,* 141 So. 3d 190 (Fla. 3rd DCA 2014)(unpublished table decision); [ECF No. 35-2, App. N at 75].

1. Applicable Law

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Hall v. Wainwright*, 733 F.2d 766, 733 (11th Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial. *Davis v. Zant*, 36 F.3d 1538, 1551 (11th Cir. 1983). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1988).

The purpose of closing argument is to explain to the jury what it must decide and what evidence is relevant to its decision. *See United States v. Iglesias,* 915 F.2d 1524, 1529 (11th Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by the court. *See Chandler v. Florida,* 449 U.S. 560, 574 (1981)("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). *See also Ward v. State,* 765 So. 2d 299, 300 (Fla. 5th DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); *Laboo v. State,* 715 So. 2d 1034, 1035 (Fla. 1st DCA 1998)(prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Thus, argument urging the jury to decide the matter based upon factors other than those it is instructed to consider is improper. Courts have, therefore, condemned argument that is inflammatory or appeals to bias or prejudice. *United States v. Childress,* 58 F.3d 693, 715 (D.C. Cir. 1995)("It is well established that a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence."). Further, it is beyond dispute that an expression by the prosecutor of his or her own belief in the defendant's guilt is improper. *See Darden v. Wainwright,* 477 U.S. 168, 181 (1986)(citation omitted).

- 42 -

2. <u>Analysis</u>

*a. Bolstering of the Credibility of the Victim and Analyst Murphy*

First, Petitioner argues that the prosecutor's argument that F.C.'s testimony was "consistent and uncontradicted" unlawfully bolstered the victim's credibility. [ECF 28 at 11]. Specifically, during closing argument, the prosecutor argued, "you heard from Melissa Murphy. She is very competent. she is presented as a competent consistent witness. She is young. She is not world renowned, however, she is competent." [ECF 36-5, App. E, T.355, 383]. The prosecutor further argued that "there was not any evidence produced or any contradictions or inconsistencies found in her testimony." [*Id.*]. These comments, even if inartful, were in direct response to defense counsel's closing argument, which attacked the reliability of the DNA testing. [ECF 35-5, App. E, T.278-94].

It is true that "attempts to bolster a witness by vouching for his credibility are normally improper and constitute error." *United States v. Newton,* 44 F.3d 913, 921 (11th Cir. 1995)(citations omitted). Courts have found it improper for the "prosecution to place the prestige of the Government behind a witness by making explicit personal assurances of the witness' veracity." *Id.* (citations omitted). The Eleventh Circuit has stated that "[w]e denounce lawyers who give their personal opinion that 'I believe the witness is telling the truth.'" *Id.* (quoting *United States v. Young,* 470 U.S. 1 (1985)). Nevertheless, it should be noted that "[t]he prohibition

- 43 -

against vouching does not forbid prosecutors from arguing credibility. . .it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez,* 921 F.2d 1569, 1573 (11th Cir. 1991).

In this case, the prosecutor did not personally vouch for the testimony of its witnesses. Rather, when read in context, it was permissible for the state to argue that there were no contradictions or inconsistencies in the testimonies of its witnesses. The prosecutor was not prohibited from arguing that its witnesses were, in fact, credible. *See United States v. Caporale,* 806 F.2d 1487, 1513 (11th Cir. 1986).

In any event, it bears noting that at the start of the trial, and again immediately before closing argument, the trial court clearly and correctly instructed the jury that what the lawyers said was not evidence in the case, should not be considered as such, and that the case must be decided only upon the evidence presented at trial. [ECF No. 35-2, App. B, T.121-28; ECF No. 36-5, App. E, T.350-51]. It is generally presumed that jurors follow their instructions. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

There is nothing to suggest that the prosecutor's comments violated Petitioner's right to due process such that they led the jury to convict him on a standard less than beyond a reasonable doubt.

### b. Bolstering Victim's Credibility

Petitioner claims the prosecutor's comment during closing argument that the jury "had an opportunity to see the pain in her face, and the tears in her eyes," unlawfully bolstered the victim's credibility. [ECF No. 28 at 11]. Petitioner is not entitled to relief on this basis.

At trial, the victim testified she could not identify her assailant as the individual depicted in the photograph shown to her by Det. Nadrama nor could she identify Petitioner, in court, as her attacker. [ECF No. 36-3, App. C, T.163]. During cross-examination, the defense attacked the victim's credibility, suggesting she was confused or embarrassed about the events that unfolded on the day she claimed she was purportedly raped. [*Id.*, T.182-86, 191]. The defense implied the victim was a prostitute, and that her version of events was incredible. [*Id.*].

When the prosecutor's comments are read in context, they were simply in rebuttal to the defense's attack on the victim's testimony, and a reminder to the jury to measure the victim's credibility by her demeanor during trial. The prosecutor's comments did not deprive Petitioner of a fair trial.

### c. Arguing Facts Not in Evidence

Petitioner next claims the prosecutor's comments that Analyst Murphy's testing led her to find the presence of semen on the evidence recovered from the victim on the day of the incident was unlawful. [ECF 28 at 11]. Petitioner is

mistaken. The comment was simply a narration of the testimony adduced at trial.

Specifically, the objected to comments by the prosecutor during closing are, as

follows:

> . . . She told you that there were one or two individual DNA's present in those evidence samples; the victim's 'F.C.,' and the defendant's, Robert Johnson.
>
> That is it. Nobody else.
>
> There is no mystery here.
>
> Either you believe her testimony and believe in DNA.
>
> Those are only two people.
>
> She told you how her testing led her to find that there was semen present, sperm present, because sperm is much more concentrated, a form of DNA, biological material, than skin cells.
>
> So she told you, because of the strength of her result, there must have been semen present. There must have been sperm present.
>
> This evidence, if you believe it, is overwhelming. It is overwhelming.

[ECF No. 36-5, App. E, T.355-56]. As previously noted, these arguments were a

summary of Analyst Murphy's trial testimony. *See* [ECF No. 36-4, App. D, T.294-

95].

When viewing the prosecutor's arguments, in relation to the evidence adduced

at trial, it is evident that the comments were neither improper, nor did they render

Petitioner's trial fundamentally unfair. There is plainly nothing in the record to suggest that the prosecutor made these statements in a deliberate attempt to distract the jury or mislead the jurors as to issues of guilt or innocence. *United States v. Hall*, 47 F. 3d 1091, 1098 (11th Cir. 1995) ("Claims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record.") (citations omitted).

Finally, based on the totality of the circumstances, when considering the facts adduced at trial, including the strength of the evidence of Petitioner's guilt, it is apparent that the prosecutor's statements were, at worst, no more than harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)(quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946) (a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict)).

In light of the strength of the evidence against Petitioner at trial, there is nothing in the record to suggest that the prosecutor's comments, even when taken together, affected the jury's verdict. Thus, Petitioner has not demonstrated either deficiency or prejudice under *Strickland* arising from counsel's failure to lodge the objection or move for a mistrial based on the prosecutor's closing argument. As such, the rejection of the claim in the Rule 3.850 proceeding was proper and should not be disturbed here. *Williams v. Taylor, supra.*

## F. Failure to Object Re Improper Sentencing Scoresheet

In **claim 6,** Petitioner asserts that trial counsel was ineffective for failing to object to the improper scoring of the sexual battery conviction as the primary offense on Petitioner's sentencing guideline scoresheet. [ECF 28 at 11]. He claims that the improper scoring permitted the court to sentence him to life imprisonment. [*Id.* at 11-12].

When the identical claim was raised as ground six in Petitioner's Rule 3.850 proceeding, it was denied by the trial court on the basis that that "argument is without merit and unsupported by the record as the scoresheet utilized in this case was properly and legally correct and appropriate." [ECF 35-2, Ex. M. at 72]. The denial of the claim was *per curiam* affirmed by the appellate court in a decision without written opinion. *See Johnson v. State,* 141 So.3d 190 (Fla. 3rd DCA 2014)(unpublished table decision); [ECF 35-2, App. N at 75].

Regarding misapplication of state sentencing guidelines, the Eleventh Circuit has determined that a claim which exceeds the maximum authorized by state law "properly falls within the scope of federal habeas corpus review because 'the eighth amendment bars a prison sentence beyond the legislatively created maximum.'" *Graber v. Sec'y, Dep't of Corr.,* 417 F. App'x 882, 883 (11th Cir. 2011)(quoting *Echols v. Thomas,* 33 F.3d 1277, 1279 (11th Cir. 1994)(quoting *Ralph v. Blackburn,* 590 F.2d 1335, 1337 n. 3 (5th Cir. 1979)).

Further, under Florida law, a primary offense is "the offense at conviction that, when scored on the guidelines scoresheet, recommends the most severe sanction." Fla. R. Crim. P. 3.701 (1990); *In re Fla. R. Crim P. 3.701 and 3.988,* 566 So. 2d 770, 771 (Fla. 1990). The sexual battery conviction, a violation of Fla. Stat. § 787.01(2) and § 775.087, is the primary offense because it is a life felony, while the kidnapping conviction, a violation of Fla. Stat. § 794.011(3) and § 775.087,  is a first degree felony, punishable for a term of years not exceeding life imprisonment, but was enhanced to a life felony because of the use of a firearm during the commission of the charged offense.

Even if, as alleged and conceded by Respondent, there was error in the computation of the guideline scoresheet, Petitioner cannot demonstrate prejudice arising from counsel's failure to object, since such error was harmless because the Petitioner still faced a statutory maximum of life imprisonment.[7] He was sentenced to concurrent terms of life imprisonment. The sentence was not unlawful so that Petitioner cannot demonstrate prejudice arising from counsel's failure to object on the basis alleged. Consequently, the rejection of the claim in the state forum is entitled to deference here. *Williams v. Taylor, supra.* Thus, Petitioner is not entitled to relief on this claim.

---

[7]For a more detailed computation of the correct sentencing score under the guidelines, see respondent's answer at pages 49-50. [ECF No. 34 at 49-50].

### G. Failure to Raise Judicial Bias on Appeal

In **claim 7,** Petitioner asserts that direct appeal counsel was ineffective for failing to raise as fundamental error that the judge was biased towards the prosecutor. [ECF No. 28 at 12]. He claims the judge acted as an advocate for the state, allowing the state to proceed without any physical evidence to support the DNA findings. [*Id.*].

When raised by Petitioner in a state habeas corpus petition with the appellate court, the claim was summarily denied on the merits. *See Johnson v. State,* 121 So.3d 1051 (Fla. 3rd DCA 2013); [ECF No. 35-2, App. O at 2-3].

To warrant recusal of a judge, Petitioner must demonstrate that judicial bias stems from "extrajudicial sources," unless the judge's acts demonstrate "pervasive bias and prejudice" which unfairly prejudices one of the parties. *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999); *Braddy v. State,* 111 So. 3d 810, 833–34 (Fla. 2012). However, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky v. United States,* 510 U.S. 540, 555 (1994); *McWhorter v. City of Birmingham,* 906 F.2d 674, 678-79 (11th Cir. 1990).

Further, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from motions to disqualify. *See Liteky,* 510 U.S. at 556. However, a judge abuses its authority when it "'abandons [its] proper role and assumes that of

an advocate.'" *United States v. Wright,* 392 F.3d 1269, 1274 (11th Cir. 2004).

Although a judge has a "duty to conduct the trial carefully, patiently, and

impartially," he may question witnesses, maintain the pace of the trial by

"interrupting or cutting off counsel as a matter of discretion." *See United States v.*

*Wright,* 392 F.3d at 1274 (quoting *Moore v. United States,* 598 F.2d 439, 442 (5th

Cir. 1979)).

      The Petitioner has not shown extrajudicial evidence of bias, much less the

type of pervasive bias required for recusal. His bias argument appears to rest on the

notion that the judge was acting as an advocate for the prosecution when it made its

evidentiary rulings. A thorough review of the record does not support Petitioner's

allegations. Disqualification cannot be based on rumors or gossip, but rather must

be based upon a defendant's "well-founded objective" fear that he will not receive a

fair hearing. See Fla. R. Jud. Admin. 2.160(d)(1); *Arbelaez v. State,* 898 So.2d 25,

41 (Fla. 2005); *State v. Shaw,* 643 So.2d 1163, 1164 (Fla. 4th DCA 1993). Petitioner

has not demonstrated either in the state forum or in this habeas petition an objective

fear that he did not receive a fair trial with the assigned judge. Consequently,

Petitioner cannot demonstrate deficient performance or prejudice under *Strickland*

arising from counsel's failure to raise this issue on direct appeal. *See Matire v.*

*Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987)(appellate counsel has no duty to

raise non-meritorious issues on appeal). Therefore, summary rejection of this claim,

without explanation, during Petitioner's state habeas corpus proceeding should not be disturbed here. 28 U.S.C. § 2254(d); *Williams v. Taylor*, *supra*.

## H. Lawfulness of Life Sentences

In **claim 8,** Petitioner asserts that his term of life imprisonment is unlawful because it was predicated on an improper assessment of 40 victim injury points based on penetration during sexual intercourse. [ECF No. 28 at 12]. According to Petitioner, there was no trial evidence establishing physical injury or trauma resulting from the sexual intercourse. [*Id.* at 13]. Absent such injury, Petitioner claims the victim injury points should not have been assessed. [*Id.*].

It is well settled that a Petitioner's challenge to state sentencing guidelines is outside the scope of federal habeas corpus review, even when couched in terms of a violation of constitutional principles. *See Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988)(explaining that habeas petitions based on issues of state law do not provided a basis for relief and that "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."); *Graber v. Sec'y, Dep't of Corr.,* 417 F. App'x 882, 883 (11th Cir. Mar. 15, 2011)(per curiam). Thus, the claim is not cognizable on habeas corpus review here.

## IX. Cautionary Instruction Re Clisby Rule

The Court is mindful of the *Clisby*[8] rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d at 936-36; *Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009)(holding that *Clisby* applies to § 2255 proceedings). However, nothing in *Clisby* requires, much less suggests, consideration of claims or arguments raised for the first time in objections. If the petitioner attempts to raise arguments or further factual support for his claims in objections, the court should exercise its broad discretion and refuse to consider Petitioner's arguments not raised before the magistrate judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1290-91 (11th Cir. 2009)(*citing Stephens v. Tolbert,* 471 F.3d 1173, 1175 (11th Cir. 2006)(finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)).

Finally, this court has considered all of Petitioner's claims for relief. *See Dupree v. Warden,* 715 F.3d 1295 (11th Cir. 2013). For all his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of

---

[8]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this report, under *de novo* review, none of the claims individually, nor the claims cumulatively warrant relief. Whether a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## X. Evidentiary Hearing

To the extent Petitioner claims he should be granted an evidentiary hearing on these claims, his argument fails because he has not met the statutory threshold for granting a hearing. In a habeas corpus proceeding, the burden is on Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011).

## XI. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000); *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a

constitutional right." See 28 U.S.C. § 2253(c)(2). To make a substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)(quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Where a district court has rejected a petitioner's constitutional claims on the merits, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## XII. Conclusion

Based upon the foregoing, it is recommended that:

1.      the federal habeas petition be DENIED;

2.      final judgment be entered in favor of respondent;

- 55 -

2.      a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the district judge within fourteen

days of receipt of a copy of the report. Failure to file timely objections shall bar

petitioner from a *de novo* determination by the district judge of an issue covered in

this report and shall bar the parties from attacking on appeal factual findings

accepted or adopted by the district judge, except upon grounds of plain error or

manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149

(1985); *Williams v. McNeil,* 557 F.3d at 1291 (finding district court has discretion to

decline consideration of arguments not presented to the magistrate judge in the first

instance).

SIGNED this 6th day of March, 2020.



UNITED STATES MAGISTRATE JUDGE

cc:    Robert Johnson, *Pro Se*
       DC#84223
       Dade Correctional Institution
       Inmate Mail/Parcels
       19000 S.W. 377th Street
       Florida City, FL  33034

Sandra Lipman, Ass't Atty Gen'l
Office of the Attorney General
SunTrust International Center, Suite 900
One S.E. Third Avenue
Miami, Florida 33131
Email: Sandra.Lipman@myFloridalegal.com